# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| KIMBERLY DiPAOLO, | Case No.: 2:10-cv-001108-RLH-RJJ |
| Plaintiff, | **O R D E R** |
| vs. | (Motion for Summary Judgment–#21; Counter Motion for Summary Judgment–#25) |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY; BILL HUMPHREY, CPCU, CLU; DOES 1 through 10 and ROE CORPORATIONS 1 through 10, inclusive, | |
| Defendants. | |

Before the Court is Defendant State Farm Mutual Automobile Insurance Company's **Motion for Summary Judgment** (#21, filed Mar. 2, 2011). The Court has also considered Plaintiff Kimberly DiPaolo's Opposition (#24, filed Apr. 11, 2011), and State Farm's Reply (#28, filed May 10, 2011).

Also before the Court is DiPaolo's **Counter Motion for Summary Judgment** (#25, filed Apr. 11, 2011). The Court has also considered State Farm's Opposition (#29, filed May 18, 2011) and DiPaolo's Reply (#32, filed June 20, 2011).

/

# BACKGROUND

This dispute arises out of an insurance policy State Farm issued to DiPaolo and an accident DiPaolo was involved in. The parties submitted a stipulated set of facts for purposes of their cross motions for summary judgment, and thus, the facts are not in dispute for the purposes of this order.

State Farm issued an automobile insurance policy to Hugo and Kimberly A. DiPaolo on December 11, 2005 (the "Policy"). This Policy was in effect at the time of the accident and covered DiPaolo's vehicle, a 2006 Escalade (the "Escalade"). The Policy provided uninsured and underinsured motor vehicle coverage pursuant to endorsements and various terms and conditions ("UM/UIM Coverage"). On May 4, 2007, DiPaolo was driving her Escalade near the intersection of Warm Springs and Las Vegas Boulevard. At the same time, a small airplane (a Piper Archer PA-28-121) experienced in-flight problems. As a result, the pilot made an emergency landing on Las Vegas Boulevard and hit DiPaolo and her Escalade (as well as other cars) causing damage to both her and the vehicle.

DiPaolo and others filed suit against the airplane's owners. Due to the other claims, DiPaolo settled with the owners for approximately half of the liability insurance policy limit available, $472,678.10. DiPaolo claims, however, that her damages exceed this amount. Therefore, she presented a UIM claim to her insurer, State Farm. State Farm evaluated the facts and circumstances and the relevant policy language. State Farm concluded that the accident was not covered because it did not involve an "underinsured motor vehicle" as defined by the policy. State Farm informed DiPaolo of its decision in a letter dated August 15, 2008. DiPaolo subsequently filed this suit.

Now before the Court are cross motions for summary judgment. For the reasons discussed below, the Court grants State Farm's motion and denies DiPaolo's motion.

/

/

**DISCUSSION**

**I.    Standard**

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir.1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). Summary judgment is appropriate in this case because no facts are in dispute as the parties have stipulated to the facts, (Dkt. #19, Stipulated Set of Facts and Documents), and the interpretation of an insurance policy under undisputed facts is merely a question of law for the court. *Cort v. St. Paul Fire and Marine Ins. Companies, Inc.*, 311 F.3d 979, 982 (9th Cir. 2002).

**II.    Analysis**

The Court must answer two questions in resolving these cross motions for summary judgment. First: Under Nevada's statutory uninsured and underinsured motorist ("UM/UIM") insurance scheme, must an insurer provide coverage for this type of accident? Second: If not, does State Farm's policy cover accidents with underinsured airplanes while they are on a freeway? The Court answers both of these questions in the negative.

   **A.    State Statutory Policy**

Under Nevada law, an insurer is prohibited from issuing an automobile insurance policy that does not comply with Nevada's mandatory UM/UIM statutes. NRS 690B.020. The Nevada Supreme Court has not addressed the issue of whether an airplane or other aircraft qualifies as an uninsured or underinsured motor vehicle for the purposes of these statutes. Thus, the Court must decide how the Nevada Supreme Court would hold using "decisions from other jurisdictions, statutes, treatises, and restatements as guidance." *Credit Suisse First Boston Corp. v. Grunwald*, 400 F.3d 1119, 1126 (9th Cir. 2005) (internal citations and quotations omitted).

1   The Nevada Supreme Court has stated that "UM/UIM coverages provide important
2   protection designed to mitigate losses sustained by policy insureds in connection with collisions
3   with uninsured or inadequately insured *drivers*." *State Farm Mut. Auto. Ins. Co. v. Fitts*, 99 P.3d
4   1160, 1162 (Nev. 2004) (emphasis added).  Further the Nevada Supreme Court has opined that,
5   "UIM insurance serves an important public purpose to provide maximum and expeditious
6   protections to the innocent victims of financially irresponsible *motorists* ...." *Id*. (internal
7   quotations and citations omitted) (emphasis added).  However, "[g]iven the public policy
8   considerations concerning UM/UIM protection, [courts] review attempts to restrict such coverage
9   with a high degree of scrutiny."

10   The Court finds that the Nevada Supreme Court would determine that Nevada's
11   UM/UIM statutes do not require insurers to cover freak accidents with underinsured aircraft.  The
12   Nevada Supreme Court's own statements show that the UM/UIM statutes are concerned with
13   drivers who choose to go with no or insufficient insurance, not pilots.  Further, every other court
14   that has addressed the question of whether aircraft are uninsured or underinsured vehicles for
15   purpose of state UM/UIM insurance coverage has said that they are not.[1]  The Washington State
16   Court of Appeals provides a particularly similar case with persuasive analysis.  In *Sperry v. Maki*,
17   740 P.2d 342 (Wash. Ct. App. 1987), a car was hit by an airplane trying to land on a highway and
18   the car's passengers sought recovery under their UM/UIM policy.  The *Sperry* court noted that
19   while the terms 'vehicle' or 'motor vehicle' may etymologically cover airplanes, the terms are
20   "ordinarily understood to mean a machine designed to move solely on the land." *Sperry*, 740 P.2d
21   at 344.  Thus, for this and other reasons, the *Sperry* court held that the plain meaning of the statute
22   did not address airplanes or other aircraft.  *Id.*  Because of the statements of the Nevada Supreme
23   Court, the persuasive analysis of other state and federal courts, and its own reasoning, the Court

---

[1] *See, e.g.*, *Automobile Club Ins. Ass'n v. LaPointe*, 843 F.2d 964, 967 (6th Cir. 1988) (holding that an airplane which crashed into insured's car was not a "motor vehicle," within meaning of indemnification provisions of Michigan's no-fault automobile insurance statute.; *RLI Ins. Co. v. Heling*, 520 N.W. 2d 849, 853 (N.D. 1994).

AO 72
(Rev. 8/82)

1  finds that the Nevada UM/UIM statutes do not require UIM coverage for accidents with
2  underinsured aircraft even while the aircraft is moving on land.

3  **B.    The Policy**

4  Since the Court has determined that Nevada law does not require State Farm to provide coverage for this type of accident, the Court must determine whether State Farm itself did provide coverage for this accident in its policy.  Under Nevada law, insurance policies must be construed and enforced as written unless there is an ambiguity.  *Ellison v. Cal. State Auto. Ass'n*, 797 P.2d 975, 977 (Nev. 1990).  Furthermore, "the language of an insurance policy will be given its plain and ordinary meaning 'from the viewpoint of one not trained in law.'" *United Nat'l Ins. Co. v. Frontier Ins. Co., Inc.*, 99 P.3d 1153, 1156-57 (Nev. 2004) (quoting *Vitale v. Jefferson Ins. Co.*, 5 P.3d 1054, 1057 (Nev. 2000)).  Thus, the Court shall not "'rewrite contract provisions that are otherwise unambiguous ... [or] increase an obligation to the insured where such was intentionally and unambiguously limited by the parties.'" *Id.* (quoting *Vitale*, 5 P.3d at 1057).

Here, the language of the policy is not ambiguous.  The policy defines a motor vehicle as a "land motor vehicle."  (Dkt. #19, Policy at 12.)  The term "land motor vehicle" is only ambiguous once attorneys get involved, not before.  And since the Court must give the term its plain and ordinary meaning as viewed by one not trained in the law, the meaning is obvious.  Even assuming that there is an ambiguity based on various dictionary definitions, *see Delli Bovi v. Pacific Indemn. Co.*, 708 N.E.2d 693, 694 (Ohio 1999), that does not mean that the term motor vehicle is ambiguous as far as common usage is concerned.  Normal people (*i.e.*, non-attorneys) do not hear the term "land motor vehicle" and picture taxiing aircraft, but cars, trucks, and likely even bulldozers and snowmobiles.  Quite simply, an airplane is an aircraft and the Court need not explain further.  As such, by defining the term 'motor vehicle' further as a 'land motor vehicle,' State Farm's policy does not cover accidents with underinsured airplanes.  For all of the above reasons, the Court grants State Farm's motion and denies DiPaolo's motion.

/

AO 72
(Rev. 8/82)

**CONCLUSION**

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that State Farm's Motion for Summary Judgment (#21) is GRANTED.

IT IS FURTHER ORDERED that DiPaolo's Motion for Summary Judgment (#25) is DENIED.

Dated: September 28, 2011.

_____
**ROGER L. HUNT**
**United States District Judge**